IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 9:21-cv-081894

IOU CENTRAL, INC.
d/b/a IOU FINANCIAL, INC

    Plaintiff,
vs.

GENMOR PLUMBING, INC.;
GENARO D. MORALES;
WILLIAM HENRY KARGER;
DAVENPORT LAW, PC.;
BRANDON SAMUEL DAVENPORT;
LAUREN PETRUZZELLI;

    Defendants.
_____/

## **COMPLAINT**

Plaintiff IOU sues the Defendants as follows:

1.    Plaintiff is incorporated in Delaware, whose principal place of business located in Georgia, which is a citizen of both states per 28 U.S.C. § 1332.

2.    Defendant Genmore [Business] is incorporated in California, the location of its principal place of business, which is a citizen of same per § 1332.

3.    Defendant Morales [Debtor] is domiciled in and a citizen of California per § 1332, who own and operate the Business. Business and Debtor are officers, owners or other agents of each other with authority to act on their behalf such as the transactions at issue.

4.    Davenport Law [DLPC] is incorporated in Texas, the location of its principal place of business. Defendant Karger is an individual domiciled in and a citizen of Florida. Defendants Davenport and Petruzelli are domiciled in and citizens of Texas.

1

5. Per § 1332, jurisdiction exists in this case based upon diversity of citizenship between the parties and the amount in controversy exceeds $76,000.00, such as relief in law or equity. Per § 1367, jurisdiction exists over all claims.

6. This litigation concerns debt, property and relief valued in excess of $76,000.00, including damages and fees recoverable by contract and statute.

7. Under 28 U.S.C. § 1391 and § 89, venue is proper as a substantial part of the events or omissions giving rise to the claims occurred here or Defendants consented to this venue and jurisdiction to which they are subject. The Loan at issue and its governing instruments stipulate they were applied for, considered and funded from Georgia, whose performance is due in Georgia. They are governed by Georgia law and provide the option for Plaintiff to file suit to enforce them in Georgia or here, which waive any defenses of jurisdiction and venue, as Debtor and Business agreed, who subjected themselves to either forum with their property and assets.

8. Personal jurisdiction exists and is proper per Fla. Stat. § 48.193 and the Constitution. DLPC, Davenport, Karger and Petruzelli conduct substantial, not insolated, business activity with Karger, from Florida, by which they derive revenue, such as 'debt relief services' for which they were paid, including by Debtor and Business, forming the basis for this case. Karger was enjoined from this very activity in Florida as further shown in this Complaint. Debtor and Business contracted with Karger, Davenport, Petruzellis, which did business together in Florida under names such as "Payday Loan Resolution," "Settle Up Debt Resolution," "Corporate General Advisors" or "Karger Consulting Group."

9. Since at least 2018, Debtor and Business conducted their plumbing company an enterprise or partnership, sharing its offices, officers, staff, property, assets and business.

10. Business and its owner, Debtor, applied for a commercial loan [Loan] at Plaintiff's Georgia office, representing in the application process that Debtor could bind the Business, had the ability and intent to comply with the Loan; whose application information was truthful, upon Plaintiff materially relied, which Debtor and Business adopted and ratified.

11. On or about 5/28/18 [Closing] Business, through Debtor, executed and delivered a Note to Plaintiff's Georgia commercial lending office for a gross loan amount/principal sum of $270,000.00, in exchange for its Funds, with a loan guaranty fee, confirming all information in the loan application process [Note ¶ 1-5].

12. The Note is breached and in default if (i) its amounts are not received when due; (ii) Business breaches its warranties, representations, covenants, terms or conditions (iii) default under any guaranty or instrument, to enhance the Loan's underwriting; a bankruptcy, insolvency or receivership proceeding is commenced by or as to Business and not dismissed within 30 days (iv) Business ceases to exist (v) obtains another loan without written permission [Note ¶ 6].

13. The Note is Business's unconditional legal obligation to satisfy the Loan, with all others who become liable for its amounts due, such as Debtor, who waived any defenses to it, aside from payment, which states:

> *Borrower and all others* [emphasis added] who become liable for the payment of all or any part of the amounts due under this Note do hereby severally waive: (i) presentment and demand for payment; (ii) notice of dishonor, protest and notice of protest, acceleration and intent to accelerate, non-payment and all other notices of any kind, except for notices expressly provided for in this Note; and (iii) *any defense, including but not limited to the defense of the statute of limitations in any action or proceeding brought for the obligations due, arising under or related to this Note aside from the defense of payment in full*. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower under this Note or the right of Lender to take further action without further notice to Borrower. [Note ¶13]
>
> Borrower is and shall be obligated to pay principal, interest and any other amounts which shall become payable hereunder *absolutely and unconditionally*

3

*and without any abatement, postponement, diminution or deduction and without any reduction for counterclaim or setoff* [emphasis added] [Note ¶14]

14. The Note is governed by Georgia law and subject to jurisdiction and venue in any forum in any action arising from or relating to it [Note ¶¶ 20, 23, 24] which Debtor and Business assumed, adopted and ratified.

15. The property and assets of Business, with all others who become liable per the Note, are encumbered as its collateral under a Security Agreement in the Note, which Debtor and Business assumed, adopted and ratified, which provides:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relation thereto [Note ¶ 21].

16. The Note and Security Agreement are enforceable by remedies such as but not limited to repossession, replevin, judicial foreclosure or prejudgment or provisional remedies

4

relating to any collateral, security or property interests of the Defendants for debt owed under the Loan [Note ¶ 25].

17. At the Closing, Debtor executed and delivered a Guaranty of the Note and Security Agreement to Plaintiff's Georgia office.

18. The Guaranty is breached and in default based upon a breach of and default on its terms or any breach of and default on the Note [Guaranty p. 1].

19. The Guaranty is Debtor's unconditional legal obligation to satisfy the Loan, with all others who become liable for it, with their estates, executors, administrators, heirs, successors and assigns, who waived defenses aside from payment, as the Guaranty states:

> In consideration of the loan made by Lender to Borrower, Guarantor hereby *absolutely and unconditionally guarantees both payment of, and collection of, the Guaranteed Debt when due under the terms of the Note. Guarantor will pay the Guaranteed Debt in full, without setoff or counterclaim upon Lender's demand*. [emphasis added] This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Note, or by circumstances relating to the Note that *might otherwise constitute a defense to this Guaranty*. Guarantor acknowledges that there may be more than one Guarantor of the Guaranteed Debt and agrees that, in such circumstances, each Guarantor shall be joint and severally liable for the Guaranteed Debt. [Guaranty ¶ 2].
>
> This Guaranty is a continuing and irrevocable guaranty of the Guaranteed Debt and shall remain in full force and effect until the Guaranteed Debt, and any other amounts payable under this Guaranty, are paid in full. This Guaranty shall continue to be effective, or be reinstated, as if such payment had not been made, if at any time any payment of any portion of the Guaranteed Debt is rescinded or must be restored or returned by Lender to Borrower upon the insolvency or bankruptcy of the Borrower or otherwise This Guaranty shall: (i) bind Guarantor and Guarantor's executors, administrators, *successors and assigns*, [emphasis added] provided that Guarantor may not assign rights or obligations under this Guaranty without Lender's prior written consent; and (ii) inure to the benefit of Lender and its successors and assign [Guaranty ¶ 3].

20. The Guaranty is governed by Georgia law and all others who become liable for or are bound by the Loan per the Guaranty are subject to jurisdiction and venue in any action arising from or relating to the Loan [Guaranty ¶¶ 11] which Debtor and Business ratified.

21. The property and assets of Debtor with all others who become liable for the Loan or are bound by the Loan are encumbered as collateral for the Loan under the Note, Security Agreement and Guaranty, or as otherwise required, which Debtor and Business ratified,

22. Plaintiff may enforce the Loan as to Debtor and all others who become liable for and are bound by the Loan under the Guaranty, with its same methods and remedies in the Note such as the Security Agreement [Guaranty ¶ 13, 19].

23. At the Closing, Debtor executed a Debit Agreement with Business to Plaintiff, authorizing Loan payments from their account into Plaintiff's account, certifying its purpose and their account, which Debtor and Business ratified and adopted.

24. At the Closing, Debtor and Business received the Loan Funds by wire transfer into their account from Plaintiff's account, to which they consented and ratified.

25. Business and Debtor assumed, adopted, ratified and are liable on the Note, Guaranty, Security and Debit Agreements and any Modification [Instruments] of which all Defendants had notice and knowledge during all times relevant. Upon information, Debtor used the Funds for household expenses to maintain or purchase property subject to the Loan.

26. The Instruments secure and encumber the interests of Business and Debtor in their property and assets, such as but not limited to the below ones:

(a) <u>Any real or personal property owned by them.</u>

(b) <u>The interests of Debtor/Business in any other business.</u>

(c) The above and other properties and assets of Debtor and Business are not subject to a homestead or other protection or exemption, which were waived by the Instruments or by the misconduct of Defendants, which were purchased, improved or maintained with the Funds, or which are otherwise invalid.

6

(d)     The properties and assets of Debtor and Business are subject to any UUC-1 or other notice as to the Loan and Instruments by Plaintiff and to jurisdiction here.

(e)     Any property and assets encumbered by other debt of Debtor and Business which Were satisfied by the Loan, into which Plaintiff is subrogated.

27.    The Instruments, when read together, are the commercial Loan, that "absolutely and unconditionally" promises its "payment and collection" [Note ¶¶ ¶ 2, 14, Guaranty ¶¶ 1-3]. Debtor and Business are "liable for its amounts due" [Note ¶ 13, Guaranty ¶¶ 3]. It bars their counterclaims, offsets and defenses except payment [Note ¶ 13-14, Guaranty ¶¶ 2]. It provides for payment of interest, costs, other charges and attorney's fees [Note ¶¶ 2, 5, 8, 10, Guaranty ¶¶ 1, 7]. It is enforceable by remedies Plaintiff may simultaneously pursue, including on the debt and Security Agreement [Note ¶¶ 21, 25, Guaranty ¶¶ 13, 19]. It was ratified by Debtor and Business who accepted and retained the Funds.

28.    Debtor and Business breached and defaulted upon the Instruments, such as but not limited to misrepresentations when obtaining the Loan, such as their ability to satisfy the Loan, defaulting just after the Closing, failing to make payments, obtaining unapproved loans, dissipating property and assets secured by the Loan such as those of Business, which they did not cure even after demand by Plaintiff. They are liable for the Loan and their misconduct, as Business was undercapitalized and could not satisfy its debts, the alter-ego of Debtor. <u>This misconduct resulted from the acts or omissions of the other Defendants, further detailed here.</u>

29.    Plaintiff owns and holds the defaulted Instruments, which has standing to enforce them prior to commencing suit, whose principal balance and value exceeds $76,000.00, with attorney's fees, pre-judgment interest and other charges as provided by law and their terms [Note ¶ 2, 5, 7, 8, 10, Guaranty ¶ 1, 7]

30. Plaintiff reasonably relied upon the representations of Debtor and Business and paid the Funds to them, which closed the Loan with them as a result.

31. Debtor and Business accepted and retained the Funds, who are fraudulently, wrongfully or unjustly enriched with them at Plaintiff's expense, by retaining their property, assets and the Funds.

32. Debtor and Business are indebted to Plaintiff for the Funds, of which their property property and assets are secured as collateral per the Instruments.

33. All interests in the property and assets of Defendants are subject to, subordinate and inferior to Plaintiff's interest, of which they had notice or knowledge, from which they benefitted, who will not be prejudiced or subjected to injustice by the relief sought.

34. All conditions precedent to occurred, were fulfilled, waived or their occurrence or fulfillment were unnecessary or futile.

### COUNT I: ENFORCEMENT OF SECURED INSTRUMENTS AND RELATED RELIEF AS TO AS TO DEBTOR AND BUSINESS

35. ¶¶ 1-34 are incorporated.

36. The Instruments are intended to bind the recipients and beneficiaries of the Funds, such as Debtor and Business, which they assumed, adopted and ratified.

37. The Instruments are secured by all property and assets of Debtor and Business by heir terms and or due to their conduct, which they assumed, adopted and ratified, including the interests of Debtor and Business in the Business Defendants

38. Debtor and Business breached the Instruments requiring their enforcement as to their property and assets per these terms or per their conduct.

39. Debtor and Business accepted the Funds, which they wrongfully retain, who are otherwise unjustly enriched by retaining them with their property and assets.

8

40. Debtor and Business cannot enjoy any beneficial interest in their property and assets without violating equitable principles, due to their misconduct.

41. The Instruments are enforceable against the property and assets of the Defendants, as a secured debt, for which there is no adequate legal remedy, requiring equitable relief, which will not prejudice anyone.

42. Per 28 U.S.C. § 2201 and applicable law, Plaintiff requests the Court declare and establish Debtor and Business are liable for the Instruments, which are a secured interest in their property and assets, enforceable as an equitable lien or mortgage or constructive trust or like remedy, without waiver of its other remedies, relating back to their execution, granting all just relief, such as its other relief.

### COUNT II: BREACH OF INSTRUMENTS AND RELATED RELIEF AS TO DEBTOR AND BUSINESS

43. ¶¶ 1-34 are incorporated.

44. Debtor and Business consented to and ratified the Instruments by accepting the Funds, for which they are liable as co-guarantors and obligors.

45. Debtor and Business breached the Instruments, failed to make payments and did not otherwise comply with their terms, which are now in default and due.

46. Plaintiff accelerated the principal balance of its defaulted Instruments of which Debtor and Business were given notice or notice was not required or is futile and the Instruments provide for payment of Plaintiff's attorney's fees and costs.

47. Per O.C.G.A. § 13-1-11, Debtor and Business are notified unless all principal, interest and other charges due under the Instruments are paid within 10 days of service of this Complaint, then Plaintiff can enforce and invoke the fees provisions of the Instruments and they will be indebted for Plaintiff's fees and costs.

48. Per O.C.G.A. § 7-4-16, Plaintiff is entitled to prejudgment interest with charges as provided by the Instruments and as provided by law.

49. Plaintiff demands judgment for its damages on the Instruments against Debtor and Business for a principal balance of at least $76,000.00, plus fees, interest, costs and its other charges, plus all just relief such as its other remedies.

## COUNT III: UNJUST ENRICHMENT AND RELATED RELIEF AS TO DEBTOR AND BUSINESS

50. ¶¶ 1-34 are incorporated.

51. Debtor and Business induced and encouraged Plaintiff to confer the Funds upon them through Debtor, of which they assumed, adopted and ratified.

52. Plaintiff provided the Funds to Debtor and Business, expecting their repayment, of which they appreciated, consented, benefitted and ratified.

53. Debtor and Business retained the Funds which should be repaid, who are otherwise unjustly enriched by them at Plaintiff's expense.

54. Per O.C.G.A. § 7-4-16, Plaintiff is entitled to prejudgment interest and other costs and charges as provided by law.

55. Per O.C.G.A. § 9-2-7 and applicable law, Plaintiff demands judgment as to Debtor and Business for the Funds, costs and all just relief, such as an equitable lien, equitable mortgage or constructive trust on their property and assets.

### COUNT IV:  MONEY HAD AND RECEIVED AND
### RELATED RELIEF AS TO DEBTOR AND BUSINESS

56. ¶ 1-34 are incorporated.

57. Debtor and Business induced Plaintiff's payment of the Funds to them through Debtor, which they received, hold and rightfully belong to Plaintiff in good conscience and equity, which they should not retain.

58. Plaintiff made demand for repayment of the Funds upon Debtor and Business which was refused, was unnecessary or futile.

59. Per O.C.G.A. § 7-4-16, Plaintiff is entitled to prejudgment interest and other costs and charges as provided by law.

60. Plaintiff demands judgment as to Debtor and Business for the balance of the Funds for at least $76,000.00, plus interest, costs and all just relief, including its other remedies, such as equitable lien, equitable mortgage or constructive trust on their property and assets.

### COUNT V: TORTIOUS INTERFERENCE AND RELATED
### RELIEF AS TO DLPC, DAVENPORT, KARGER, PETRUZZELLI

61. ¶¶ 1-34 are incorporated

62. DLPC, Davenport, Karger and Petruzzelli are part of an industry of "debt relief companies" who falsely promise small business debtors, such as Business/Debtor, to 'resolve' their debts with commercial lenders but nearly always leave a small business in a worse position.

63. Debt relief companies unlawfully interfere with and procure breaches of contracts or business relationships between business lenders and their merchant-debtors, instructing debtors to switch bank accounts, cease loan payments and cease contact with lenders, disposing of and fraudulently transferring their property and assets to evade debts, charging debtors exorbitant fee to do so, which is illegal and unjustified conduct.

11

64. In November 2018, Plaintiff negotiated a Modification of the Loan for Debtor and Business to pay reduced Loan payments, per their alleged financial hardship, which were paid, as Business and Debtor were not inclined or predisposed to breach the Loan and its Modification.

65. In April 2019, a stop payment was placed on the account of the Business, which breached the Loan, preventing Plaintiff from debiting further loan payments from Business and Debtor, who refused to communicate with Plaintiff on the Loan.

66. Plaintiff was contacted by DLPC, Karger, Petruzzelli and Davenport who claimed to 'represent' Debtor and Business, to allegedly satisfy their debts such as the Loan.

67. DLPC is a 'debt relief company' of which Davenport, Karger and Petruzzelli are agents, providing 'services' for debtors to 'eliminate' debts for which DLPC is paid monthly 'fees' for 40-48 months ["Global Client Solutions"] but vanishes after being paid. https://www.avvo.com/legal-answers/i-had-a-lawer-service-davenport-law--call-me-on-my-737685.html. https://getoutofdebt.org/tag/davenport-law. https://getoutofdebt.org/61568/karger-associates-karger-consulting-group-consumer-complaint-september-16-2013. See 9/13/19 Yelp Review as to Payday Loan Resolutions, an affiliate of DLPC, operated by Karger and Petruzelli:

> "If I could give this company zero stars, I would. I have been scammed out of a few thousand dollars. The customer service was horrible, no one answers the phone. They never settled ANY of my debts, they only drafted funds from my account and ran with it all. I was told that they are now out of business. Has anyone filed a lawsuit against this company? They need to be held accountable for what they did to hundreds if not thousands of us."
> https://www.yelp.com/biz/payday-loan-resolution-delray-beach

68. DLPC is owed by Brandon Davenport, a Texas lawyer, not licensed in other states states such as Georgia or California, undisclosed to Plaintiff. DLPC "negotiates" with "Enrolled Creditors" to "reduce the amount each such creditor is willing to accept as full and final

12

payment" for a particular debt. https://getoutofdebt.org/wp-content/uploads/2013/02/Screen-Shot-2013-02-28-at-1.41.08-PM.jpg

69. Karger is a Maryland lawyer, who is not licensed in other states such as Georgia, California or Florida, who forfeited his status as a Virginia attorney on or about 3/27/07, per a 4/19/07 administrative forfeiture list of the Virginia Bar, also undisclosed to Plaintiff.

70. Karger was removed as authorized house counsel in Florida and enjoined from the unauthorized practice of law in Florida by an Order of the Florida Supreme Court dated 6/27/14, SC14-980, who was also reprimanded for his misconduct by an Order of the Maryland Court of Appeals on 12/22/14, also not disclosed to Plaintiff.

71. The Florida Order enjoins Karger from operating an office or another regular professional presence in Florida to practice law or establishing an interstate firm or office unless he associates with Florida counsel, who otherwise cannot hold himself out as authorized to practice law in Florida.

72. Karger was enjoined from the unlawful practice as a Wisconsin debt relief agency with Petruzzelli, paralegal of DLPC, by order of a Wisconsin agency dated 6/27/17, affirmed by an Order of the Wisconsin Supreme Court dated 1/18/19, also not disclosed to Plaintiff. Karger and Petruzelli conducting business for Davenport as "Payday Loan Resolutions."

73. DLPC, Davenport, Karger, Petruzelli and Keith Tough, another DLPC employee illegally directed Business and Debtor to cease communicating with Plaintiff to cease Loan payments, to terminate Plaintiff's access to their account, in breach of the Loan, who illegally negotiated payments on the Loan with Plaintiff's staff in Georgia, without disclosing the prior orders, which they violated, after which Loan payments and communications ultimately ceased.

74. DLPC, Davenport, Karger and Petruzzelli made no attempt to resolve the Loan default and Business and Debtor did not satisfy the Loan, which may no longer satisfy it.

75. The Loan is a valid, legal agreement and business relationship between Plaintiff, Business and Debtors, of which DLPC, Davenport Karger and Petruzzelli had notice and knowledge, who are strangers to the Loan, who had no legal right or justification to interfere with or procure a breach of the Loan, particularly considering the prior orders involving them.

76. Upon information, DLPC, Davenport, Karger and Petruzzelli did not disclose the prior orders or other restrictions on their conduct to the Business and Debtor, which was intended to deceive Business and Debtor into 'debt settlement' for the benefit of these DLPC Defendants, who drained Business and Debtor of monies needed to satisfy for the loan for their own 'fees.'

77. DLPC, Davenport, Karger and Petruzzelli intentionally, improperly and wrongfully interfered with the Loan, procured its breach, precluded a cure of the breach, purposefully and maliciously caused Debtor and Business to cease Loan payments and cease communicating with Plaintiff, without satisfying the Loan, to benefit themselves and to injure Plaintiff.

78. Plaintiff was proximately and actually damaged by the misconduct of DLPC, Davenport, Karger and Petruzzelli, who caused the Loan to default, whose bad-faith misconduct was willful, knowing and illegal, which they ratified, to get paid by the other Defendants.

79. Plaintiff demands judgment against DLPC, Davenport, Karger and Petruzzelli for compensatory, consequential, special, nominal, punitive damages of at least $76,000.00, costs and all just relief including an injunction barring their further interference with Plaintiff's loans.

## COUNT VI:  ATTORNEY'S FEES AND RELATED RELIEF
## AS TO ALL DEFENDANTS

80. ¶¶ 1-35 are incorporated.

81. Defendants acted in bad faith by their misconduct, refusing to resolve the matters matters, requiring Plaintiff to bring the action and incur costs and fees.

82. Defendants were stubbornly litigious as there was no dispute of their liability, which caused Plaintiff the unnecessary trouble/expense to bring suit.

83. Per O.C.G.A. § 7-4-16, Plaintiff is entitled to prejudgment interest plus any charges provided by the terms of the Instruments.

84. Per O.C.G.A. §13-6-11 and applicable law, Plaintiff demands judgment as to the Defendants for its fees, costs and just relief, such as its other remedies, if not otherwise granted.

85. Defendants are not minor(s) or adjudged incompetent; were not in the military for the last 30 days and not subject to protection per 50 U.S.C. § 3901.

Respectfully submitted this 11th day of October 2021.

By:  */s/Paul G. Wersant*
Paul G. Wersant
Florida Bar No. 48815
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiff IOU
File No. 40791